IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARIA MACRI ) | |
| ) | |
| Plaintiff, ) | 3:11CV 262 |
| ) | |
| v. ) | CIVIL NO: _____ |
| ) | |
| FORBA HOLDINGS, LLC n/k/a ) | |
| CHURCH STREET HEALTH ) | |
| MANAGEMENT, LLC, FORBA ) | |
| SERVICES, INC., SMALL SMILES OF ) | |
| SOUTH BEND, LLC a/k/a SMALL ) | |
| SMILES DENTAL CLINIC OF SOUTH ) | |
| BEND ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

Maria Macri ("Macri"), by counsel and for her Complaint against FORBA Holdings, LLC n/k/a Church Street Health Management, LLC, FORBA Services, Inc., Small Smiles of South Bend, LLC a/k/a Small Smiles Dental Clinic of South Bend ("collectively referred to herein as "Corporate Defendants"), states and alleges the following:

I. <u>NATURE OF ACTION</u>

1.  Macri, a Caucasian Italian American with a qualified disability, brings this action against the Corporate Defendants alleging that the Corporate Defendants discriminated against Macri because of her national origin, race, and disability in contravention of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended 42 U.S.C. § 2000 ("Title VII"), and the Corporate Defendants

discriminated against Macri because of her disability in contravention of the American's with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA").

## II.   THE PARTIES

2.   Maria Macri is a resident of St. Joseph County, Indiana, presently residing at 19299 Edinburgh Drive, South Bend, Indiana 46614.

3.   At all relevant times, FORBA Holdings, LLC n/k/a Church Street Health Management, LLC was incorporated in the State of Delaware, had its principle place of business located at 618 Church Street, Suite 520, Nashville, Tennessee 37219, and maintained offices and conducted its' business within the geographical boundaries of the Northern District of Indiana.

4.   At all relevant times, Small Smiles of South Bend, LLC a/k/a Small Smiles Dental Clinic of South Bend was incorporated in the State of Indiana, had its principle place of business located at 2332 Miracle Lane, Mishawaka, Indiana 46545, and maintained offices and conducted its' business within the geographical boundaries of the Northern District of Indiana.

5.   The Corporate Defendants own and operate a dental center which focuses on providing dental treatment for Medicaid recipients in the Northern District of Indiana, and which is located at 2332 Miracle Lane, Mishawaka, Indiana 46545. The following allegations are jointly made against the Corporate Defendants.

## III. JURISDICTION AND VENUE

6.   The Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331.

7.   Macri is an "employee" as that term is defined by 29 U.S.C. § 630(f).

8.   The Corporate Defendants qualify as an "employer" as that term is defined by 29

2

U.S.C. § 630(b).

9. Macri is an "employee" as that term is defined by 42 U.S.C. § 2000e(f)

10. The Corporate Defendants qualify as an "employer" as that term is defined by 42 § 2000(e)(b).

11. The acts of the Corporate Defendant administrators, officers, managers, supervisors, employees or agents are also the acts of the Corporate Defendants.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as all events, transactions, occurrences and material acts of the Corporate Defendants' administrators, officers, managers, supervisors, employees, or agents concerning this matter have arisen within the geographical environs of the Northern District of Indiana.

13. Macri is bringing these proceedings within the time limits as identified in the Equal Employment Opportunity Commission form 161-B, issued under mailing date of March 28, 2011. A photocopy of the aforesaid Equal Employment Opportunity Commission form 161-B is attached hereto, made a part hereof and identified as "Plaintiff's Exhibit A". Macri received the form 161 on or about March 30, 2011. Therefore, Macri timely filed this action within ninety (90) days of her receipt of EEOC form 161.

14. Prior thereto, Macri timely initiated her Equal Employment Opportunity Commission proceedings by filing of a certain "charge of discrimination," as signed and filed by Macri on September 20, 2010. That same "charge of discrimination" was also filed with the Indianapolis, Indiana offices of the Equal Employment Opportunity Commission on the date of September 24, 2010. A photocopy of Macri's "charge of discrimination" is attached hereto and made a part hereof and identified as plaintiffs' Exhibit B.

IV. <u>FACTUAL STATEMENT OF THE CLAIM</u>

15. Macri was employed by the Corporate Defendants, from on or about September 10, 2007, through June 8, 2010, the effective date of her time. During that time she held the position of office manager.

16. Attached hereto, made a part hereof, and identified as plaintiff's Exhibit C, is Macri's offer letter made to her on August 23, 2007, which sets forth the terms of her employment, including Macri's in the amount of Fifty Thousand Dollars ($50,000.00) per year.

17. During Macri's employment with the Corporate Defendants, she was discriminated against on an almost daily basis by her African American supervisor, Dr. Bridgett Merritt-Brooks ("Merritt-Brooks").

18. Merritt-Brooks would often harass the Caucasian employees, including Macri, make racial slurs regarding the Caucasian employees, including Macri, and the Caucasian race in general. Merritt-Brooks did not uniformly enforce the company's policies and procedures with respect to employees at the Small Smiles of South Bend, but favored African American employees.

19. Merritt-Brooks consistently treated African-American employees, such as LaTonya Green, Michelle Rockette, and Diana Brown more favorably than Caucasian employees, including Macri, in terms of discipline, training, opportunity for assistance in the clinic, support for difficult cases, overlooking absences, tardiness, and everyday common courtesies.

20. Merritt-Brooks would often belittle Macri in front of office staff making it

difficult for Macri to be respected as a leader and office manager.

21. There were numerous instances of discriminatory practices by the Corporate Defendants and Merritt-Brooks, including but not limited to:

    a. Merritt-Brooks would rarely, if ever, reprimand the Hispanic or African American employees, and would not enforce the Corporate policies with regard to these individuals. However, Merritt-Brooks would seek out pretextual reasons to discipline Macri and/or put additional onus on Macri when none was put on other employees. Specifically, typical Corporate wide protocol for staffing during the lunch hour required that one individual staff the front desk to receive telephone calls. However, on June 8, 2010 Merritt-Brooks disciplined Macri (by verbally berating her over the telephone and then issuing a formal written reprimand) for leaving for a one hour lunch period, which she was entitled to take, because Merritt-Brooks did not believe there was enough staffing to handle telephone calls. However, Macri's taking a lunch hour complied with the Corporate standards, and this type of restriction was not imposed on African American or Hispanic employees.

    b. Merritt-Brooks reprimanded Macri for not providing the company with two (2) weeks advance notice for taking two (2) hours of time off on June 7, 2010, due to the fact that Macri had a migraine. Macri merely asked Merritt-Brooks if she could use two (2) hours of her paid time off and come in at approximately 10:00 a.m. instead of her normal in time. Merritt-Brooks reprimanded Macri for this, informing her that she was required to give two (2) weeks notice for the use of any paid time off, despite the fact Macri had given a medical reason (which cannot be scheduled) for being off of work.

This reprimand was clearly pretext to Macri for the Defendants' discriminatory intent of treating Macri less favorably than African American employees and Hispanic employees, as these types of issues were never brought up with any of the African American or Hispanic employees.

    c.    There were numerous instances during Macri's tenure with the Corporate Defendants that required Macri to correct the failings of Hispanic and/or African American employees. Macri's good faith correction of issues would often result in an unwarranted and pretextual reprimand by her African American boss. For example, on June 8, 2010, an employee brought a patient chart to Macri for review due to incorrect billing practices carried out by Dr. Lisa Dekker-Reed, another African American dentist. Macri brought this issue to Merritt-Brooks' attention, as Macri wanted to ensure that the Corporate Defendants were in compliance with Medicaid billing requirements. Macri faced anger and verbal abuse from both Dekker-Reed and Merritt-Brooks, and then was terminated later that day.

22.    Macri is also a qualified individual with a disability.

23.    In August of 2009, Merritt-Brooks became aware that Macri had a disability. At the same time, upon becoming aware of the disability, Merritt-Brooks began to unnecessarily scrutinize Macri's work performance, and subjected her to additional work place harassment.

24.    Additionally, Merritt-Brooks had a pattern of harassing and bullying Caucasian employees as well as disabled employees.

25.    Macri witnessed Merritt-Brooks verbally harass another Caucasian, disabled

employee named Jennifer Gilbert ("Gilbert") until she was terminated. This also occurred on a regular basis with another Caucasian employee, Beth Wallis on a regular basis.

26. Specifically, Merritt-Brooks did not afford Gilbert the benefit of working on actual patients while she was training for her Expanded Functions Dental Assistant (EDA) certification, but she did so for African American employees, Jamie Gardner and Jamie Brown, while they were in school.

27. In 2006, Gilbert took a leave of absence for her first pregnancy, which happened to be directly after Gilbert had attained her EDA certification. This meant Gilbert had no actual patient treatment time in the clinic after graduating. Merritt-Brooks was aware that Gilbert was less trained and less experienced than other EDA employees who had been able to assist the dentists and practice with a doctors oversight while they had attended school. However, Merritt-Brooks harassed and criticized Gilbert for her performance, despite her performance being adequate.

28. Merritt-Brooks was aware of Gilbert's disability. Instead of making reasonable accommodations for Gilbert in the workplace, Merritt-Brooks intentionally put Gilbert into situations where she would have difficulty. Merritt-Brooks carried out this scheme to create a pretext under which to terminate Gilbert.

29. Macri reported the unlawful discrimination that occurred regarding herself as well as fellow disabled and Caucasian employees to her superiors within the Corporate Defendants management, including but not limited to Kerry Lester and Shawn Nicholson during approximately July of 2009. The Corporate Defendant's failed to prevent further discrimination, despite being put on notice of the discriminatory practices as early as July of 2009.

30. As a result of all the unlawful, discrimination acts on the part of the Corporate Defendants, by its administrators, officers, managers, supervisors, employees, or agents (including but not necessarily limited to the aforementioned Merritt-Brooks and Dekker-Reed), Macri is a victim of Title VII violations committed by the Corporate Defendants.

31. Macri is also a victim of unlawful discrimination in violation of the American's with Disabilities Act as amended, as a result of the conduct of Corporate Defendants.

32. Macri is entitled to relief from and against the Defendants

V.  DEMAND FOR JUDGMENT

WHEREFORE, plaintiff, Maria Macri, demands judgment against the Defendants including. any and all relief as may be provided under Title VII and the American's with Disabilities Act, including but not necessarily limited to:

(1) both back pay and front pay;

(2) an award of prejudgment interest;

(3) an award of compensatory damages;

(4) an award of punitive damages; and

(5) an award of costs as incurred by plaintiff in her prosecution of this claim, including her reasonable attorney fees, her expert witness fees, as well as any court costs herein.

                    Respectfully submitted,

*[signature]*

Peter J. Agostino (10765-71)
Michael P. Misch (#27970-71)
ANDERSON, AGOSTINO & KELLER, P.C.
131 South Taylor Street
South Bend, Indiana 46601
Telephone: (574) 288-1510
Facsimile: (574) 288-1650

## **JURY DEMAND**

Plaintiff, Maria Macri, by counsel, requests trial by jury.

*[signature]*

Peter J. Agostino (10765-71)
Michael P. Misch
ANDERSON, AGOSTINO & KELLER
131 South Taylor
South Bend, Indiana 46601
Telephone: (574) 288-1510